UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

No. 11 Civ. 4326 (RJS)
_____

PHILIPS AMADOR, *et al.*, individually and
on behalf of others similarly situated,

Plaintiffs,

VERSUS

MORGAN STANLEY & CO. LLC, f/k/a Morgan Stanley
& Co. Incorporated, *et al.*,

Defendants.
_____

MEMORANDUM AND ORDER
February 7, 2013
_____

RICHARD J. SULLIVAN, District Judge:

Plaintiffs Philips Amador, Sylvester Cetina, and JoAnn Sunkett, together with opt-in Plaintiffs Jodi Goldman, Adrienne McGrath, Melynda Monfils, David Pierce, and Marlene Roberts (together, "Plaintiffs") bring this action against Defendants Morgan Stanley & Co. LLC ("MS&Co."), Morgan Stanley Smith Barney ("MSSB"), and Morgan Stanley (collectively, "Morgan Stanley" or "Defendants"), asserting claims under the Fair Labor Standards Act (the "FLSA") and various state laws for alleged unpaid overtime work performed as former and current client services associates, registered client services associates, and senior registered client services associates (collectively, "CSAs") at Morgan Stanley. Before the Court is Plaintiffs' motion for an order conditionally certifying this case as an FLSA collective action so that additional CSAs who work or worked for Morgan Stanley can be notified of their right to participate in the lawsuit. For the reasons that follow, and as announced at the January 23, 2013 conference, the Court grants Plaintiffs' motion.

I.   BACKGROUND

A.   Facts

Morgan Stanley is a global financial services firm that, in providing products and services to its clients, employs CSAs at its branch locations throughout the United

States.[1] (*See* Answer ¶ 3.) CSAs are eligible for overtime pay under the FLSA (*see id.* ¶ 4), and they assist Morgan Stanley's Financial Advisors by, *inter alia*, performing clerical duties, interacting with clients, responding to client requests, and creating spreadsheets and other financial reports (*see* Am. Compl. ¶ 2; Decl. of Seth R. Lesser, dated Nov. 7, 2012, Doc. No. 56 ("Lesser Decl."), Ex. M).

Morgan Stanley has formal written policies whereby "[a]ll non-exempt employees are required to maintain accurate time and attendance records" and "will be paid overtime," with "prior management approval," for work performed over forty hours per week. (Decl. of Katherine Koutsantonis, dated Dec. 7, 2012, Doc. No. 62 ("Koutsantonis Decl."), Ex. A.) However, Plaintiffs allege that, despite Morgan Stanley's written policy to pay overtime, Defendants maintained a *de facto* "off-the-clock" overtime policy and practice of having CSAs work overtime, preventing CSAs from recording their overtime hours, and/or preventing CSAs from receiving compensation for overtime actually worked. (*See* Am. Compl. ¶ 5.) Specifically, Plaintiffs allege that Morgan Stanley branch managers and supervisors knew that CSAs were working overtime to satisfy the various demands of their jobs but nonetheless told CSAs not to accurately record their hours, altered or told CSAs to alter their time sheets to remove overtime hours worked, and/or otherwise pressured CSAs not to report overtime hours actually worked. (*See*

Lesser Decl. Ex. B (Amador Dep.) at 183:14–16, 213:8–24; *id.* Ex. C (Cetina Dep.) at 68:23–69:2, 71:11–14, 162:15–163:11; *id.* Ex. E (Goldman Dep.) at 32:20–21, 107:8, 156:2–18; 165:15–166:4; *id.* Ex. F (McGrath Dep.) at 101:9–13, 116:6–117:3; *id.* Ex. G (Monfils Dep.) at 74:1–8, 98:19–99:4; *id.* Ex. H (Pierce Dep.) at 58:15–16, 104:22–105:17, 166:2–4; *id.* Ex. I (Roberts Dep.) at 159:5–8, 171:11–16; *id.* Ex. J (Dunaway Decl.) ¶¶ 6, 8, 10–11; *id.* Ex. K (Forrest Decl.) ¶¶ 5, 7, 9; *id.* Ex. L (Fulk Decl.) ¶¶ 6, 9; *id.* Ex. N.) According to Plaintiffs, as a result of Morgan Stanley's *de facto* policy, CSAs did not accurately report, or receive compensation for, their overtime hours. (*See id.* Ex. C (Cetina) at 108:17–18, 186:25–187:4; *id.* Ex. G (Monfils) at 105:12–16; *id.* Ex. H (Pierce) at 106:1–3; *id.* Ex. I (Roberts) at 92:22–93:1; *id.* Ex. J (Dunaway Decl.) ¶ 12; *id.* Ex. K (Forrest Decl.) ¶ 10; *id.* Ex. L (Fulk Decl.) ¶ 10.)

B.  Procedural History

On June 27, 2011, Amador initiated this action by filing a Complaint, and the action was subsequently assigned to the docket of the Honorable Naomi Reice Buchwald, United States District Judge. (Doc. No. 1.) On July 29, 2011, Amador, Cetina, and Lisa Hudson – a former plaintiff who subsequently filed a notice of voluntary dismissal as to her claims only – filed the First Amended Complaint individually and on behalf of others similarly situated. (Doc. No. 8; *see* Doc. No. 14.) After Hudson voluntarily withdrew her claims, Amador and Cetina filed a Second Amended Complaint on November 17, 2011, individually and on behalf of others similarly situated. (Doc. No. 15.) On February 3, 2012, Amador, Cetina, Sunkett, and Laura Ritter – another former plaintiff who subsequently filed a notice of voluntary dismissal as to her claims only – filed a

---

[1] The facts are taken from the Third Amended Collective and Class Action Complaint ("Am. Compl."), Defendants' Answer ("Answer"), and the limited discovery submitted to the Court in connection with the instant motion. In ruling on the instant motion, the Court also considers Plaintiffs' opening brief ("Mem."), Defendants' opposition brief ("Opp'n"), and Plaintiffs' reply brief ("Reply").

Third Amended Collective and Class Action Complaint, individually and on behalf of all others similarly situated. (Doc. No. 24.)

On May 8, 2012, this action was reassigned to the docket of the undersigned. (Doc. No. 37.) Plaintiffs filed the instant motion on November 7, 2012, and the motion was fully submitted as of January 3, 2013.[2] (*See* Doc. Nos. 54–56, 61–63, 65, 68, 71.) On January 23, 2013, the Court heard oral argument on the motion.

## II. DISCUSSION

### A. Legal Standard for FLSA Class Certification

Under the FLSA, employees may maintain collective actions to recover unpaid wages where the employees are "similarly situated" and give consent to become a party in a writing filed with the court. 29 U.S.C. § 216(b). District courts have discretion to implement § 216(b) by "'facilitating notice to potential plaintiffs' of the pendency of the action and of their opportunity to opt-in as represented plaintiffs." *Myers v. Hertz Corp.*, 624 F.3d 537, 554 (2d Cir. 2010) (quoting *Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165, 169 (1989)).

The Second Circuit has adopted a "two-step method of certification in an opt-in collective action under the FLSA." *Winfield v. Citibank, N.A.*, 843 F. Supp. 2d 397, 401–02 (S.D.N.Y. 2012) (citing *Myers*, 624 F.3d at 554–55). At the first step, the district court must make "an initial determination to send notice to potential opt-in plaintiffs who may be 'similarly situated' to the named plaintiffs with respect to whether a FLSA violation has occurred," *Myers*, 624 F.3d at 555, and, if the court determines that notice is warranted, issue "a 'conditional certification' of the collective action," *Winfield*, 843 F. Supp. 2d at 402; *Guillen v. Marshalls of MA, Inc.*, 750 F. Supp. 2d 469, 475 (S.D.N.Y. 2010) ("Orders authorizing notice are often referred to as orders 'certifying' a collective action, even though the FLSA does not contain a certification requirement."). To satisfy their burden at this first step and achieve "conditional certification," plaintiffs must make only a "modest factual showing that they and potential opt-in plaintiffs together were victims of a common policy or plan that violated the law." *Myers*, 624 F.3d at 555 (internal quotation marks omitted). "Plaintiffs may satisfy this requirement by relying on their own pleadings, affidavits, declarations, or the affidavits and declarations of other potential class members." *Hallissey v. Am. Online, Inc.*, No. 99 Civ. 3785 (KTD), 2008 WL 465112, at *1 (S.D.N.Y. Feb. 19, 2008).

Although "unsupported assertions" are insufficient, the Second Circuit has emphasized that the standard of proof should remain "low" because "the purpose of this first stage is merely to determine *whether* 'similarly situated' plaintiffs do in fact exist." *Myers*, 624 F.3d at 555 (internal quotation marks omitted); *see also Hoffman v. Sbarro, Inc.*, 982 F. Supp. 249, 261 (S.D.N.Y. 1997) ("The burden on plaintiffs [at stage one] is not a stringent one, and the [c]ourt need only reach a preliminary determination that potential plaintiffs are 'similarly situated.'"). Because the standard at the first stage is "fairly lenient," courts applying it "typically grant[] conditional

---

[2] On January 10, 2013, Sunkett filed a notice of voluntary dismissal as to Count IV only. She continues to pursue her FLSA claims, and no other Plaintiffs are affected by her dismissal of the single Count. (Doc. No. 74.) Moreover, in the time since Plaintiffs filed their motion, additional CSAs have consented to become Plaintiffs in this action. (Doc. Nos. 57 (Croom), 58 (Forrest), 64 (May), 67 (Dunaway), 69 (Franco), 72 (McAvinney), 76 (Alviani).)

3

certification." *Malloy v. Richard Fleischman & Assocs. Inc.*, No. 09 Civ. 332 (CM), 2009 WL 1585979, at *2 (S.D.N.Y. June 3, 2009) (internal quotation marks omitted); *see also Cunningham v. Elec. Data Sys. Corp.*, 754 F. Supp. 2d 638, 644 (S.D.N.Y. 2010) ("At this first step, the court uses a relatively lenient evidentiary standard to determine whether a collective action is appropriate." (internal quotation marks omitted)).

"At this procedural stage, the court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations. Indeed, a court should not weigh the merits of the underlying claims in determining whether potential opt-in plaintiffs may be similarly situated." *Lynch v. U.S. Auto. Ass'n*, 491 F. Supp. 2d 357, 368 (S.D.N.Y. 2007) (citation omitted); *accord Cunningham*, 754 F. Supp. 2d at 644. At the first stage, "any factual variances that may exist between the plaintiff and the putative class do not defeat conditional class certification." *Lynch*, 491 F. Supp. 2d at 369; *cf. also, e.g.*, *Fasanelli v. Heartland Brewery, Inc.*, 516 F. Supp. 2d 317, 322 (S.D.N.Y. 2007) ("To the extent that Defendants['] opposition relies on a detailed factual dispute about whether the Defendants maintain an 'illegal off-the clock' policy, 'illegal tip retention' policy, or fail to pay the minimum wage, that inquiry is misplaced as those issues go to the merits of the case."). *Compare Diaz v. Elecs. Boutique of Am., Inc.*, No. 04 Civ. 0840E (SR), 2005 WL 2654270, at *4 (W.D.N.Y. Oct. 17, 2005) (denying conditional certification where responsibilities of employees might differ and require individualized analysis), *with Francis v. A & E Stores, Inc.*, No. 06 Civ. 1638 (CS) (GAY), 2008 WL 4619858, at *3 n.3 (S.D.N.Y. Oct. 16, 2008) (noting that *Diaz* is "against the weight of authority").

"Upon finding that plaintiffs are 'similarly situated' with other potential opt-ins, a court should conditionally certify the class, order that appropriate notice be given to putative class members, and the action continue as a collective action throughout the discovery process." *Hernandez v. Merrill Lynch & Co.*, No. 11 Civ. 8472 (KBF), 2012 WL 1193836, at *3 (S.D.N.Y. Apr. 6, 2012) (internal quotation marks omitted).

It is at the second stage of the certification process when "the district court will, on a fuller record, determine whether a so-called 'collective action' may go forward by determining whether the plaintiffs who have opted in are in fact 'similarly situated' to the named plaintiffs. The action may be 'de-certified' if the record reveals that they are not, and the opt-in plaintiffs' claims may be dismissed without prejudice." *Myers*, 624 F.3d at 555; *Hernandez*, 2012 WL 1193836, at *4 ("The burden imposed at [the] first 'conditional certification' stage is minimal precisely because the second step allows for a full review of the factual record developed during discovery to determine whether opt-in plaintiffs are *actually* 'similarly situated' to the named plaintiffs."); *Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 369 (S.D.N.Y. 2007) ("If the fruits of full discovery reveal that plaintiffs are not, in fact, 'similarly situated' to defendants' other employees, or that only employees who worked at the same facility or engaged in a particular job are 'similarly situated,' [the court] may later decertify the class or divide it into subclasses, if appropriate.").

Despite this clear two-step framework, Defendants argue that Plaintiffs should be required to meet a more exacting standard than that typically applied at the first stage of the certification process because Plaintiffs make their motion "after a seven-month discovery period." (*See, e.g.*, Opp'n 10–11.)

4

However, Defendants cite no binding authority for such a heightened standard, and the Court finds none.[3]  Indeed, the overwhelming case law in this Circuit clearly holds that "a heightened standard is not appropriate during the first stage of the conditional certification process and should only be applied once the entirety of discovery has been *completed*." *Winfield*, 843 F. Supp. 2d at 402 n.3 (emphasis added) (collecting cases); *Harper v. Gov't Emps. Ins. Co.*, 826 F. Supp. 2d 454, 457–58 (E.D.N.Y. 2011) ("Defendant's main objection is that because some discovery has been completed . . . a more stringent post-discovery analysis should have been applied . . . . [However], courts in this circuit hold generally that until the completion of discovery, the first tier analysis set forth in *Myers* applies."); *Cunningham*, 754 F. Supp. 2d at 645 ("Even where the parties have undertaken substantial discovery, our courts have continued to use the first-stage certification analysis.") (collecting cases).[4] Because not all discovery has been completed, the Court finds that the first-stage standard set forth in *Myers* controls.

B. Analysis

As noted above, the instant motion seeking court-authorized notice implicates only the first step in the *Myers* inquiry, and therefore, "the threshold to be met is . . . quite low." *Hernandez*, 2012 WL 119386, at *4. After reviewing the pleadings and the deposition testimony, declarations, and documentary evidence submitted in connection with the instant motion, the Court finds that Plaintiffs have satisfied their minimal burden at this preliminary stage of demonstrating that they were subject to common policy or practice and were "similarly situated" to one another and to potential class members.

1. Common Policy or Practice

Here, three plaintiffs, five opt-in plaintiffs, and three declarants each allege that he or she was employed as a CSA, a position that is not exempt from the FLSA's overtime pay provisions, and was not always compensated for time worked in excess of forty hours per week. (*See* Lesser Decl. Ex. B (Amador Dep.) at 213:8–11; *id.* Ex. C (Cetina Dep.) at 68:23–69:2; *id.* Ex. D (Sunkett Dep.) at 63:12–16; *id.* Ex. E (Goldman Dep.) at 156:2–18; *id.* Ex. F

---

[3] Defendants cite only one intra-Circuit opinion – *Torres v. Gristede's Operating Corp.*, No. 04 Civ. 3316 (PAC), 2006 WL 2819730, at *9 (S.D.N.Y. Sept. 29, 2006) – that applied a heightened standard at the conditional certification stage.  However, *Torres* is plainly inapposite because it involved a situation in which *all* fact discovery had been completed prior to the filing of the motion for conditional certification.  *Torres*, 2006 WL 2819730, at *7 n.7 ("The proceedings in this case do not mirror the traditional two-stage process described.  Plaintiffs moved for certification of collective action class after discovery had already been conducted."). Furthermore, some courts within this Circuit have explicitly *declined* to follow *Torres*. *See, e.g.*, *Gortat v. Capala Bros. Inc.*, No. 07 Civ. 3629 (ILG), 2010 WL 1423018, at *9 n.12 (E.D.N.Y. 2010) ("In one case cited by the magistrate judge, *Torres* . . . , the court explicitly endorsed the application of heightened scrutiny in a post-discovery, but pre-notice, context. . . . This [c]ourt declines to follow *Torres*."). Therefore, "[g]iven that courts in this Circuit continue to apply the first-stage test until at least the completion of fact discovery, . . . this Court will apply the more lenient first-stage test, although it will consider the evidence obtained in discovery and submitted by both parties in that analysis." *Cunningham*, 754 F. Supp. 2d at 646.

[4] Defendants argue that conditionally certifying an opt-in class is burdensome, often involves "extensive discovery," and often leads to settlement before the Court can decide whether to decertify a class at stage two of the *Myers* framework.  (Opp'n 10–11.) However, those concerns hardly provide compelling reasons to ignore the Second Circuit's lenient standard set forth in *Myers*.

5

(McGrath Dep.) at 116:6–15, 128:7–12; *id.* Ex. G (Monfils Dep.) at 74:1–8; *id.* (Pierce Dep.) at 58:15–16; *id.* Ex. I (Roberts Dep.) at 171:11–16); *id.* Ex. J (Dunaway Decl.) ¶ 4; *id.* Ex. K (Forrest Decl.) ¶ 3; *id.* Ex. L (Fulk Decl.) ¶ 4.) Collectively, these eleven individuals worked in nine states and thirteen branches, and nine of them assert that they witnessed or have knowledge that other CSAs at either their Morgan Stanley branches or at others worked more than forty hours per week without being paid overtime actually worked. (*See id.* Ex. B (Amador Dep.) at 75:11–17; *id.* Ex. C (Cetina Dep.) at 71:11–14; *id.* Ex. D (Sunkett Dep.) at 57:4; *id.* Ex. E (Goldman Dep.) at 34:7–9; *id.* Ex. F. (McGrath Dep.) at 142:5–6; *id.* Ex. H (Pierce Dep.) at 108:23–25; *id.* Ex. I (Roberts Dep.) at 157:3; *id.* Ex. J (Dunaway Decl.) ¶ 16; *id.* Ex. K (Forrest Decl.) ¶ 14.) Plaintiffs have also submitted evidence that CSAs generally had uniform duties and responsibilities. (*Id.* Ex. M.)[5]

Moreover, Plaintiffs have presented evidence that Morgan Stanley branch managers and supervisors knew that CSAs were working overtime hours to adequately perform their job functions but nonetheless: (1) told them to not record those hours, except in particular circumstances and with pre-approval; (2) altered time records that reflected overtime; (3) demanded that CSAs who submitted timesheets reflecting overtime change those timesheets; and/or (4) pressured CSAs in such a way as to discourage them from asking for overtime that they actually worked. (*See id.* Ex. B (Amador Dep.) at 183:14–16; *id.* Ex. C (Cetina Dep.) at 71:11–14, 162:15–163:11; *id.* Ex. E (Goldman Dep.) at 32:20–21, 107:8, 165:15–166:4; *id.* Ex. F (McGrath Dep.) at 101:9–13; *id.* Ex. G (Monfils Dep.) at 98:19–99:4; *id.* Ex. H (Pierce Dep.) at 104:22–105:17, 166:2–4; *id.* Ex. I (Roberts Dep.) at 159:5–8; *id.* Ex. J (Dunaway Decl.) ¶¶ 6, 8, 10–11; *id.* Ex. K (Forrest Decl.) ¶¶ 5, 7, 9; *id.* Ex. L (Fulk Decl.) ¶¶ 6, 9; *id.* Ex. N; Koutsantonis Decl. Ex. A.) Plaintiffs and declarants also assert that, although there was a formal policy of requiring payment for overtime work, CSAs regularly worked overtime "off-the-clock" in order to satisfy the needs of their jobs. (*See* Lesser Decl. Ex. B (Amador Dep.) at 213:8–24; *id.* Ex. C (Cetina Dep.) at 68:23–69:2; *id.* Ex. E (Goldman Dep.) at 156:2–18; *id.* Ex. D (Sunkett Dep.) at 63:12–16; *id.* Ex. F (McGrath Dep.) at 116:6–117:3; *id.* Ex. G (Monfils Dep.) at 74:1–8; *id.* Ex. H (Pierce Dep.) at 58:15–16, 108:4–17; *id.* Ex. I (Roberts Dep.) at 171:11–16; *id.* Ex. J (Dunaway Decl.) ¶ 6; *id.* Ex. K (Forrest Decl.) ¶ 5; *id.* Ex. L (Fulk Decl.) ¶ 6.) As a result of Morgan Stanley's *de facto* policy, CSA witnesses and declarants stated that they did not accurately report their overtime hours. (*See id.* Ex. C (Cetina Dep.) at 108:17–18, 186:25–187:4; *id.* Ex. G (Monfils Dep.) at 105:12–16; *id.* Ex. H

---

[5] Defendants attempt to refute Plaintiffs' claim that CSAs had a "uniform job description" by pointing to the fact that Plaintiffs attached "eight different descriptions covering . . . four different positions." (Opp'n 17 n.10; *see* Lesser Decl. Ex. M.) However, even assuming that there are some discrepancies in terms of CSAs' respective roles, "[t]he fact that the employees held different positions at different locations does not prevent conditional certification. Courts have found employees 'similarly situated' for purposes of the FLSA where they performed different job functions or worked at different locations, as long as they were subject to the same allegedly unlawful policy." *Harhash v. Infinity W. Shoes, Inc.*, No. 10 Civ. 8285 (DAB), 2011 WL 4001072, at *3 (S.D.N.Y. Aug. 25, 2011) (collecting cases); *see Ravenell v. Avis Budget Car Rental, LLC*, No. 08 Civ. 2113 (SLT) (ALC), 2010 WL 2921508, at *5 (E.D.N.Y. July 19, 2010) ("FLSA collective actions are not restricted to employees who are clones of one another working in completely identical stores, in identical neighborhoods, with identical clientele. It is insufficient to merely describe all the ways in which plaintiff's exact day-to-day tasks differ." (citation and internal quotation marks omitted)).

(Pierce Dep.) at 106:1–3; *id.* Ex. I (Roberts Dep.) at 92:22–93:1; *id.* Ex. J (Dunaway Decl.) ¶ 12; *id.* Ex. K (Forrest Decl.) ¶ 10; *id.* Ex. L (Fulk Decl.) ¶ 10.)

In an effort to defeat conditional certification, Defendants make a number of arguments, each of which the Court rejects. First, Defendants contend that (1) CSAs at Morgan Stanley were each subject to official policies that required them to accurately record all of their time worked, including overtime, and (2) any violations that did occur were the result of "a few rogue managers disobey[ing] the company's directives." (Opp'n 4–5, 13.) However, at the first stage of the *Myers* framework, "the existence of a formal policy that is facially unlawful is not a prerequisite for conditional certification. Instead, it is sufficient to show that a facially lawful policy was implemented in an unlawful manner, resulting in a pattern or practice of FLSA violations." *Winfield*, 843 F. Supp. 2d at 405 (collecting cases); *see also Hernandez*, 2012 WL 1193836, at *4–5 (rejecting arguments, *inter alia*, that defendant "ha[d] a company-wide policy requiring recordation of overtime (with attendant compensation)[ and] that plaintiffs failed to proffer evidence of a '*de facto* policy' allowing (or requiring) unrecorded overtime"). Thus, "the existence of a formal policy of requiring overtime pay should not immunize the defendant where[, as here,] the plaintiffs have presented evidence that this policy was commonly violated in practice." *Winfield*, 843 F. Supp. 2d at 408; *see also Falcon v. Starbucks*, 580 F. Supp. 2d 528, 536 (S.D. Tex. 2008) ("Defendants correctly note that it is not unlawful for an employer to have a policy of discouraging overtime. Where such a policy, however, in combination with other factors, leads to a consistent pattern of FLSA violations, it can support a finding that [p]laintiffs are similarly situated for purposes of section 216."); *Beauperthuy v. 24 Hour Fitness USA, Inc.*, No. 06-0715 (SC), 2008 WL 793838, at *4 (N.D. Cal. Mar. 24, 2008) ("An employer's responsibility under the FLSA extends beyond merely promulgating rules to actually enforcing them. . . . That Defendants published a handbook cannot immunize them against an FLSA action where there is substantial evidence that they did not follow their own guidelines."); *Levy v. Verizon Info. Servs., Inc.*, Nos. 06 Civ. 1583, 06 Civ. 5056 (NG) (SMG), 2007 WL 1747104, at *2 (E.D.N.Y. June 11, 2007) (granting conditional certification despite existence of defendant's written policy requiring payment of overtime).

Here, as noted above, Plaintiffs argue and provide evidence indicating that Morgan Stanley's formal policy was obviated by a *de facto* policy – known to managers or supervisors at thirteen of Morgan Stanley's branches – of requiring overtime work without attendant compensation.[6] Such allegations are sufficient at the conditional certification stage, particularly because Plaintiffs "need not show that 'all managers nationwide [acted] in lockstep' in order to make a modest factual showing that they were subject to a common policy or practice." *Winfield*, 843 F. Supp. 2d at 408–09 (quoting *Falcon*, 580 F. Supp. 2d at 536).

Defendants nevertheless cite a series of cases in which courts refused to grant nationwide conditional certification where the respective plaintiffs alleged that the defendants had *de facto* policies at variance from the companies' respective formal written policies. (Opp'n 12–13, 21.)

---

[6] Although Plaintiffs have satisfied their minimal burden at the *first* stage of the *Myers* framework, their evidence might not be sufficient to demonstrate a *de facto* policy at the *second* stage of the *Myers* framework. That later inquiry is, however, properly left for another day.

7

However, those cases are readily distinguishable. For instance, in *Eng-Hatcher v. Sprint Nextel Corp.*, the court denied a motion for conditional certification where the plaintiff, unlike Plaintiffs here, "merely present[ed] her own deposition testimony as proof of these allegations." No. 07 Civ. 7350 (BSJ), 2009 WL 7311383, at *3 (S.D.N.Y. Nov. 13, 2009). Likewise, in *Simmons v. T-Mobile USA, Inc.*, the court denied a motion for conditional certification because there was "no admissible proof from or about any specific [retail sales representative] other than [the plaintiff] that support[ed] his claim that [retail sales representatives] commonly work unpaid overtime." No. H-06-1820 (NFA), 2007 WL 210008, at *6–7 (S.D. Tex. Jan. 24, 2007). Plainly, the facts of those cases bear little resemblance to the facts here, where Plaintiffs presented deposition testimony and declarations from multiple CSAs at multiple branches of Morgan Stanley nationwide.

The other cases that Defendants cite are no more on point. For example, in *Richardson v. Wells Fargo Bank, N.A.*, the court denied conditional certification where, unlike here, "most [p]laintiffs provide[d] no evidence that their supervisors actually told them that they must perform work off-the-clock, nor [did] most [p]laintiffs provide proof of any rejected request for overtime pay for the tasks in issue." No. 11 Civ. 738 (NFA), 2012 WL 334038, at *4 (S.D. Tex. Feb. 2, 2012). Similarly, in *Carey v. 24 Hour Fitness USA, Inc.*, the Court denied conditional class certification where, unlike here, only three putative class members submitted evidence, none had joined the lawsuit despite its two-year pendency, and sales goals were imposed differently from club to club. No. H-10-3009 (NFA), 2012 WL 4857562, at *2–3 (S.D. Tex. Oct. 11, 2012); *see also Brickey v. Dolgencorp, Inc.*, 272 F.R.D. 344, 347–48 (W.D.N.Y. 2011) (denying conditional certification where, unlike here, there was no evidence that "employer intended, compelled[,] or condoned unlawful consequences that were a direct result of the [alleged unlawful] policy"); *Seever v. Carrols Corp.*, 528 F. Supp. 2d 159, 173–74 (W.D.N.Y. 2007) (denying conditional certification for nationwide class of 100,000 employees where, unlike here, only evidence in support of certification were allegations from two plaintiff employees who worked at the same store, one affidavit from employee who worked at another store, and additional employee affidavits that were "incomprehensibly vague as to the material circumstances surrounding [the] particular alleged policies").

Additionally, Defendants assert that Plaintiffs cannot demonstrate a policy or practice because Plaintiffs' allegations boil down to a claimed absence of a class policy – namely, that "'Morgan Stanley [did not] have a policy for supervisors to ensure that all CSA work stopped before exceeding forty hours.'" (Opp'n 15 (quoting Mem. 10).) Thus, according to Defendants, Plaintiffs' argument regarding Morgan Stanley's purported policy or practice runs counter to the Supreme Court's admonition in *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011), that a "'policy *against having* uniform employment practices'" is "'just the opposite of a uniform employment practice that would provide the commonality needed for a class action.'" (Opp'n 15 (quoting *Wal-Mart*, 131 S. Ct. at 2554).) However, Defendants' argument is misplaced because "[t]he weight of authority rejects the argument that *Dukes* bars certification in wage and hour cases." *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 616 (S.D.N.Y. 2012) (collecting cases). "[G]iven the minimal burdens that plaintiffs carry" at the first-stage of the *Myers* framework, "[c]ourts in this Circuit have

repeatedly emphasized that the more exacting [Federal Rule of Civil Procedure 23] requirements" are simply not applicable. *Winfield*, 843 F. Supp. 2d at 409 (same); *see Romero v. H.B. Automotive Grp.*, No. 11 Civ. 386 (CM), 2012 WL 1514810, at *6 (S.D.N.Y. May 1, 2012). "Thus, to make a modest factual showing that they were subject to a 'common policy or plan that violated the law,' [P]laintiffs need not demonstrate that they meet the commonality requirement of Rule 23[,] as articulated in *Dukes*." *Winfield*, 843 F. Supp. 2d at 409–10 (citation omitted) (quoting *Myers*, 624 F.3d at 555).

In any event, Defendants argue that they could not have had a policy or practice of not compensating CSAs for overtime work because MSSB paid millions of dollars in overtime to CSAs since January 2010. (*See* Opp'n 5, 18–19.) However, this argument is beside the point. The question for the Court is not whether Defendants paid *any* overtime to some of the Plaintiffs but whether they paid *all* overtime or had a policy of limiting the amount of overtime pay – through the explicit or implicit actions of their managers and supervisors – that CSAs were entitled to receive. *See Hens v. ClientLogic Operating Corp.*, No. 05 Civ. 381S (WMS), 2006 WL 2795620, at *5 (W.D.N.Y. Sept. 26, 2006). Thus, the mere fact that MSSB paid a significant sum in overtime to CSAs is not dispositive or even relevant at the conditional certification stage. *See Creely*, 789 F. Supp. 2d at 836–37.

Accordingly, the Court finds that Plaintiffs have sufficiently demonstrated a common *de facto* policy or practice.

### 2. Similarly Situated

In attempting to refute Plaintiffs' allegation that the putative class of CSAs is "similarly situated," Defendants also argue that Plaintiffs' deposition testimony and the declarants' assertions reveal a number of inconsistencies regarding, *inter alia*: (1) whether and to what extent the CSAs worked overtime; (2) whether overtime was requested and approved; (3) whether CSAs recorded their overtime using Morgan Stanley's timekeeping mechanism and, if not, why not; (4) whether Morgan Stanley paid the CSAs overtime; (5) whether the CSAs performed compensable work; and (6) whether the managers or supervisors knew or should have known that the CSAs worked unpaid overtime. (Opp'n 14–22.) "Rather than engage in a lengthy discussion of each, suffice it to say that none defeats the required 'modest showing' because all would require the Court to resolve factual disputes or make credibility determinations. As discussed above, such a judicial exercise would be inappropriate on this motion at this first stage." *Hernandez*, 2012 WL 1193836, at *5. Indeed, the type of "person-by-person fact-intensive inquiry [sought by Defendants] is premature at the conditional certification stage and has been specifically rejected by courts within this Circuit." *Raniere v. Citigroup, Inc.*, 827 F. Supp. 2d 294, 323 (S.D.N.Y. 2011) (collecting cases); *see also, e.g.*, *Francis*, 2008 WL 4619858, at *3 n.3 (noting that cases "denying conditional certification where fact-specific inquiry might be required, seem to be against the weight of authority in undertaking that analysis at the first stage of the certification process, rather than evaluating at the decertification stage whether the need for individual analysis makes a collective action inappropriate").

Defendants also ask the Court to weigh competing declarations that they submitted from Morgan Stanley's Executive Director in Human Resources and other CSAs currently employed with the company. (*See* Opp'n 4, 17, 19; *see generally* Koutsantonis Decl.; Decl. of Thomas A. Linthorst, dated

Dec. 7, 2012, Doc. No. 63, Exs. 10–12.) As an initial matter, statements gathered by an employer from its current employees are of limited evidentiary value in the FLSA context because of the potential for coercion. *See, e.g.*, *In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 527 F. Supp. 2d 1053, 1060 (N.D. Cal. 2007); *Creely v. HCR ManorCare, Inc.*, 789 F. Supp. 2d 819, 840 (N.D. Ohio 2011). In any event, Plaintiffs "have not had an opportunity to depose these declarants, and courts in this Circuit regularly conclude that such declarations do not undermine the plaintiffs' showing in the first stage of the conditional certification process." *Winfield*, 843 F. Supp. 2d at 407 n.6; *see also Cohen v. Gerson Lehrman Grp., Inc.*, 686 F. Supp. 2d 317, 329 (S.D.N.Y. 2010) ("[I]t would be inappropriate to rely on defendants' affidavits at an early stage of litigation, prior to the affiants' availability for deposition."); *In re Penthouse Exec. Club Compensation Litig.*, No. 10 Civ. 1145 (NRB), 2010 WL 4340255, at *4 (S.D.N.Y. Oct. 27, 2010) (finding defendants' argument based on competing affidavits "amounts to a premature request to make credibility determinations and factual findings, something that is inappropriate at the notice stage"); *Aros v. United Rentals, Inc.*, 269 F.R.D. 176, 180 (D. Conn. 2010) (declining to consider declarations from defendant's current employees because they "do not bear on whether [plaintiff] has made the 'modest factual showing' that he is required to make at this stage of the litigation."). As Judge Forrest cogently explained in *Raniere*:

> To balance the parties' competing affidavits at this stage would require the Court to determine the facts, determine credibility of the affiants, and resolve legal contentions, all of which the conditional certification and potential later decertification process is structured so as to avoid. As long as Plaintiffs' [a]ffidavits are sufficiently similar and detailed to constitute a preliminary showing that they and other potential plaintiffs together were victims of a common policy or plan, Plaintiffs have met their burden.

827 F. Supp. 2d at 324; *see also Davis v. Abercrombie & Fitch Co.*, No. 08 Civ. 1859 (PKC), 2008 WL 4702840, at *7 (S.D.N.Y. Oct. 23, 2008) ("Defendants cite the declaration of plaintiffs' supervisor attesting that such a practice was never allowed to occur. This, of course, is of the same evidentiary value as plaintiffs' affirmations to the contrary. This is a factual dispute which the Court cannot resolve at this stage and on this limited record." (citation omitted)).

\*   \*   \*

Accordingly, the Court finds that Plaintiffs have satisfied their minimal burden and that they may disseminate court-authorized notice to other potentially "similarly situated" members of the putative class.

C. Adequacy of the Proposed Notice

Having addressed whether to authorize notice, the Court next considers whether Plaintiffs' proposed notice is appropriate. Although neither the FLSA nor the courts "have specifically outlined what form court-authorized notice should take . . . [, w]hen exercising its broad discretion to craft appropriate notices in individual cases, [d]istrict [c]ourts consider the overarching policies of the collective suit provisions," including achieving judicial efficiency "by settling the claims of similarly situated employees at the same time." *Fasanelli*, 516 F. Supp. 2d at 323. Here, Plaintiffs originally argued that, to properly effectuate

10

the Court-appointed notice on the putative class, Defendants should be required to produce:

> A list, in electronic format, of all persons employed by Defendants as [CSAs], three years [prior to] the date of the order to the present including: names, addresses, telephone numbers, e-mail addresses, work locations, and dates of employment.

(Mem. 23–24); *cf. Stevens v. HMSHost Corp.*, No. 10 Civ. 3571 (ILG) (VVP), 2012 WL 4801784, at *4 (E.D.N.Y. Oct. 10, 2012) ("At the conditional certification stage, prior to discovery on the issue of willfulness, courts ordinarily refuse to determine willfulness and authorize notice to cover the past three years."). Plaintiffs also originally requested that the Court order Defendants to post the notice and consent forms "in a conspicuous place at all work locations of potential collective action members." (Mem. 24.)[7]

Defendants lodged a series of objections to aspects of Plaintiffs' proposed notice. (Opp'n 23–24.) For instance, Defendants argued that notice should be limited to the specific branches where Plaintiffs worked. (Opp'n 23–24.) However, "[w]hile courts have refused to certify national collective actions based solely on an individual's deposition or even based on several geographically clustered plaintiffs' depositions, . . . [c]ourts regularly conditionally certify collective actions" where, as here, evidence is presented from multiple employees from multiple locations nationwide. *Stevens*, 2012 WL 4801784, at *3 (citations omitted) (collecting cases); *see, e.g.*, *Winfield*, 843 F. Supp. 2d at 403–04; *Ravenell*, 2010 WL 2921508, at *4–6; *cf. Harhash*, 2011 WL 4001072, at *3 (rejecting argument that Plaintiffs need only notice those employees who are similarly situated to "others who performed identical functions at identical locations").[8] Thus, the Court overrules Defendants' objection.

The parties resolved their disputes with regard to Defendants' remaining objections at oral argument, agreeing that: (1) Defendants would have to produce CSAs' email address but not their phone numbers; (2) notice should not be sent to CSAs who worked for Defendants in California;[9] and (3) Defendants need not post notice and consent forms at the work locations of potential collective action members. Therefore, in light of the parties' agreement at oral argument, and as indicated

---

[7] As noted *infra*, Plaintiffs later abandoned some of these requests.

[8] The intra-Circuit cases that Defendants cite in support of their argument are readily distinguishable. For instance, in *Rudd v. T.L. Cannon Corp.*, the court conditionally certified an off-the-clock collective action at a single location where the affiants worked because their claims were particularized to *only that one location*. No. 10 Civ. 0591 (TJM) (DEP), 2011 WL 831446, at *9–10 (N.D.N.Y. Jan 4, 2011). Similarly, in *Hens*, the court limited notice to facilities in four cities where plaintiffs or declarants worked only because the proposed notice "include[d] all of [the defendant's] domestic facilities, and include[d] a time frame in which [the defendant] did not [even] own or operate some of those facilities." 2006 WL 2795620, at *5.

[9] Specifically, Defendants argued that CSAs who worked for Defendants in California were potential class members in a separate earlier-filed action – *Martinez v. Morgan Stanley & Co.*, No. 37-2009-00103267 (Ca. Super. Ct). (Opp'n 24.) According to Defendants, including those CSAs in the class notice here would be duplicative and cause unnecessary confusion because the parties in the California action have reached a class action settlement in principle and, once the settlement is approved, the California CSAs would be getting two sets of notice in two separate actions. (*Id.*)

11

on the record on January 23, 2013, the Court orders Defendants to produce a list, in electronic format, of the names, e-mail addresses, work locations, and dates of employment of all persons employed by Defendants as CSAs in the last three years, exclusive of CSAs who work or worked in California. Defendants need not, however, post notice and consent forms at the work locations of potential collective action members.

### III. CONCLUSION

For the foregoing reasons, and as stated on the record at the January 23, 2013 oral argument, the Court grants Plaintiffs' motion for conditional class certification and orders Defendants to produce to Plaintiffs, within twenty-one days, a list, in electronic format, of the names, e-mail addresses, work locations, and dates of employment of all persons employed by Defendants as CSAs in the last three years, exclusive of CSAs who work or worked in California. Accordingly, the Clerk of Court is respectfully directed to terminate the motion located at Doc. No. 54.

In light of the Court's ruling and, as stated on the record at the January 23, 2013 conference, the parties are directed to submit, no later than February 8, 2013, either (1) their proposed class notice; or (2) if the parties still have remaining disagreements regarding that notice, a joint letter outlining their respective positions.

SO ORDERED.

\* \* \*

Plaintiffs are represented by Seth Richard Lesser, Fran L. Rudich, and Michael John Palitz, Esqs., Klafter, Olsen & Lesser, LLP, Two International Drive, Suite 350, Rye Brook, New York 10573; and Gregg I. Shavitz and Susan Hilary Stern, Esqs., Shavitz Law Group, 1515 South Federal Highway, Suite 404, Boca Raton, Florida 33432.

Defendants are represented by Thomas Anton Linthorst, Esq., of Morgan, Lewis & Bockius LLP, 502 Carnegie Center, Princeton, New Jersey 08540; and Christopher Kenneth Ramsey and Stephanie Rosel Reiss, Esqs., Morgan, Lewis & Bockius LLP, One Oxford Centre, Thirty-Second Floor, Pittsburgh, Pennsylvania 15219.

```
USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2-7-13
```

RICHARD J. SULLIVAN
United States District Judge

Dated: February 7, 2013
    New York, New York

12