**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| PHILIPS AMADOR,<br>SYLVESTER CETINA, AND JOANN<br>SUNKETT, Individually and on behalf all others<br>similarly situated,<br><br>                          Plaintiffs,<br><br>    -against-.<br><br>MORGAN STANLEY & CO. LLC,<br>f/k/a Morgan Stanley & Co. Incorporated,<br>MORGAN STANLEY SMITH BARNEY LLC,<br>and MORGAN STANLEY,<br><br>                          Defendants. | No. 1:11-cv-04326-RJS |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF SETTLEMENT
OF COLLECTIVE AND CLASS ACTION**

Seth R. Lesser
Fran L. Rudich
KLAFTER OLSEN & LESSER LLP
Two International Drive, Suite 350
Rye Brook, New York 10573
Telephone:    (914) 934-9200
Facsimile:    (914) 934-9220

Gregg I. Shavitz
Susan H. Stern
Paolo C. Meireles
SHAVITZ LAW GROUP, P.A.
1515 South Federal Highway, Suite 404
Boca Raton, Florida 33432
Telephone:    (561) 447-8888
Facsimile:    (561) 447-8831

*Attorneys for Plaintiffs and Settlement Classes*

## TABLE OF CONTENTS

INTRODUCTION .................................................................................................................1

BACKGROUND .................................................................................................................2

SUMMARY OF THE SETTLEMENT TERMS ....................................................................4

    I.       The Settlement Classes ....................................................................................4

    II.      The Settlement Fund .......................................................................................4

    III.    Notice and Distribution of Individual Settlement Amounts ..................................5

    V.      Reserve Fund ...................................................................................................5

    VI.    Releases ............................................................................................................6

    VII.   Class Certification ...........................................................................................6

    VIII.  Allocation Formula ..........................................................................................6

    IX.    Attorneys' Fees and Costs ...............................................................................7

    X.      Enhanced Payments to the Named Plaintiffs and Opt-in Plaintiffs Who Gave Depositions ......................................................................................................8

    XI.    Reservation of Rights ......................................................................................9

    XII.   Settlement Claims Administrator .....................................................................9

CLASS ACTION SETTLEMENT PROCEDURE ...............................................................9

ARGUMENT ...................................................................................................................11

    I.       The Court Should Grant Preliminary Approval of the Proposed Settlement .......................................................................................................11

          A.    The Legal Standards for Preliminary Approval ..........................................11

          B.    The Proposed Settlement Is Fair, Reasonable, and Adequate Considering the Complexity, Expense, and Likely Duration of the Litigation, the Stage of the Proceedings, and the Amount of Discovery Completed ..................13

1.      Complexity, Expense, and Likely Duration of the Litigation ................................................................13

2.      Stage of Proceedings and Amount of Discovery Completed .....................................................................15

C.      The Proposed Settlement Is Fair, Reasonable, and Adequate Given the risks of Establishing Liability and Damages ..............................................15

D.      Establishing a Class and Maintaining it Through Trial Would Not Be Simple .......................................................................................16

E.      The Settlement Fund is Substantial, Even in Light of the Best Possible Recovery and the Attendant Risks of Litigation, the "Ability of Defendants to Withstand a Greater Judgment" and the "Reasonableness of the Proposed Settlement" Factors Support Approval of the Proposed Settlement .....................................................................................17

II.     The Classes Should be Certified For Settlement Purposes.....................................18

A.      The Rule 23(a) Factors are Met ..............................................................19

1.      Numerosity ........................................................................19

2.      Commonality and Typicality ...........................................20

3.      Adequacy ...........................................................................21

B.      The Rule 23(b)(3) Factors are Met ........................................................22

III.    The Proposed Notice to the Class Members Is Adequate and Satisfies Due Process ................................................................................................23

IV.     Plaintiffs' Counsel Should Be Appointed Class Counsel....................................24

CONCLUSION ..................................................................................................................25

## TABLE OF AUTHORITIES

**Cases**

*Alli v. Boston Mkt. Corp.,* 2012 U.S. Dist. LEXIS 54695 (D. Conn. Apr. 17, 2012)................ 7, 8

*Amchem v. Windsor Prods.*, 521 U.S. 591 (1997) ................................................ 22, 23

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.,* 222 F.3d 52 (2d Cir. 2000)......................... 21

*Caridad v. Metro-N. Commuter R.R.,* 191 F. 3d 283 (2d Cir. 1999)............................................. 20

*Castagna v. Madison Square Garden, L.P.*, 2011 U.S. Dist. LEXIS 64218
   (S.D.N.Y. June 7, 2011)........................................................................ 11

*Central States Southeast v. Merck-Medco,* 504 F.3d 229 (2d Cir. 2007) .................................... 19

*Cf. Robidoux v. Celani,* 987 F.2d 931 (2d Cir. 1993) ................................................. 20

*Chatelain v. Prudential-Bache Sec., Inc.,* 805 F. Supp. 209 (S.D.N.Y. 1992)............................ 12

*City of Detroit v. Grinnell Corp.,* 495 F.2d 448 (2d Cir. 1974)................................. 12, 13, 14, 18

*Clark v. Ecolab Inc.,* 2010 U.S. Dist. LEXIS 47036 (S.D.N.Y. May 11, 2010*) ..................... 8, 13

*Cnty. of Suffolk v. Long Island Lighting Co.,* 710 F. Supp. 1422 (E.D.N.Y. 1989)......................... 19

*Cnty. of Suffolk v. Long Island Lighting Co.,* 907 F.2d 1295 (2d Cir. 1990) ................................. 19

*Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards  & Sons, Inc*., 502 F.3d 91 (2d Cir. 2007)........ 22

*deMunecas v. Bold Food, LLC,* 2010 U.S. Dist. LEXIS 87644 (S.D.N.Y. Aug. 23, 2010)........... 8

*Diaz v. Electronics Boutique of Am., Inc.*, 2005 U.S. Dist. LEXIS 30382
   (W.D.N.Y. Oct. 13, 2005) ..................................................................... 17

*Duchene v. Michael Cetta, Inc.*, 2009 U.S. Dist. LEXIS 85955 (S.D.N.Y. Sept. 10, 2009).......... 8

*Faican v. Rapid Park Holding Corp.*, LEXIS 64382 (E.D.N.Y. June 29, 2010) .......................... 8

*Frank v. Eastman Kodak Co.*, 228 F.R.D. 174 (W.D.N.Y. 2005) ................................................ 21

*Goldberger v. Integrated Res., Inc.,* 209 F.3d 43 (2d Cir. 2000)............................................ 12, 13

*Goldstein v. North Jersey Trust Co.,* 39 F.R.D. 363 (S.D.N.Y. 1966) ........................................ 19

*Granada Invest., Inc. v. DWG Corp.,* 962 F.2d 1203 (6th Cir. 1992) ........................................... 16

*Green v. Wolf Corp.,* 406 F.2d 291 (2d Cir. 1968) ....................................................................... 23

*In re Agent Orange Prod. Liab. Litig.,* 818 F.2d 145 (2d Cir. 1987) ........................................... 20

*In re Austrian & German Bank Holocaust Litig.,* 80 F. Supp. 2d 164 (S.D.N.Y. 2000) ....... 13, 15

*In re Austrian & German Bank Holocaust Litig.,* 236 F.3d 78 (2d Cir. 2001) ............................ 13

*In re Flag Telecom Holdings, Ltd. Securities Litigation*, 574 F.3d 29 (2d Cir. 2009) ................ 21

*In re IPO Sec. Litig.*, 243 F.R.D. 79 (S.D.N.Y. 2007) .................................................................. 12

*In re RJR Nabisco Sec. Litig.,* 1992 U.S. Dist. LEXIS 12702 (S.D.N.Y. Aug. 24, 1992) .......... 16

*In re Sumitomo Copper Litig.,* 189 F.R.D. 274 (S.D.N.Y. 1999) ................................................ 12

*In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.,* 718 F. Supp. 1099
    (S.D.N.Y. 1989) ....................................................................................................................... 18

*In re Check/MasterMoney Antitrust Litig.,* 280 F.3d 124 (2d Cir. 2001) .................................... 21

*In re Warfarin Sodium Antitrust Litig.,* 391 F.3d 516 (3d Cir. 2004) ................................... 11, 15

*In re Warner Commun. Sec. Litig.,* 618 F. Supp. 735 (S.D.N.Y. 1985) ...................................... 16

*In re Warner Commun. Sec. Litig.,* 798 F.2d 35 (2d Cir. 1986) .................................................. 16

*Johnson v. Brennan*, 2011 U.S. Dist. LEXIS 105775 (S.D.N.Y. Sept. 16, 2011) ......................... 8

*Lynn's Food Stores, Inc. v. United States,* 679 F.2d 1350 (11th Cir. 1982) ............................... 13

*Marisol A. v. Guiliani*, 126 F.3d 372 (2d Cir. 1997) ................................................................... 20

*Masters v. Wilhelmina Model Agency, Inc.,* 473 F. 3d 423 (2d Cir. 2007) ................................. 24

*Maywalt v. Parker & Parsley Petroleum Co.,* 67 F.3d 1072 (2d Cir. 1998) ............................... 12

*McBean v. City of New York*, 228. F.R.D. 487 (S.D.N.Y. 2005) ................................................. 23

*McMahon v. Olivier Cheng Catering and Events,* 2009 U.S. Dist. LEXIS 18913
    (S.D.N.Y. Mar. 2, 2010) ...................................................................................................... 8, 13

*Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar,* 2009 U.S. Dist. LEXIS 27899
    (S.D.N.Y. Mar. 31, 2009) .................................................................................................... 8, 13

*Newman v. Stein,* 464 F.2d 689 (2d Cir. 1972)...........................................................................18

*Oppenlander v. Standard Oil Co.,* 64 F.R.D. 597 (D. Colo. 1974)..............................................16

*Parker v. Jekyll & Hydye Entm't Holdings., L.L.C.*, 2010 U.S. Dist. LEXIS 12762
   (S.D.N.Y. Feb 9, 2009)...........................................................................................................8

*Polar Int'l Brokerage Corp. v. Reeve,* 187 F.R.D. 108 (S.D.N.Y. 1999)....................................11

*Prasker v. Asia Five Eight LLC,* 2010 U.S. Dist. LEXIS 1445 (S.D.N.Y. Jan. 4, 2010) ...............8

*Republic Nat'l Life Ins. Co. v. Beasley,* 73 F.R.D. 658 (S.D.N.Y. 19770)...................................18

*Reyes v. Altamarea Group,* 2011 U.S. Dist. LEXIS 115984 (S.D.N.Y. Aug. 16, 2011)...............8

*Reyes v. Buddha-Bar NYC*, LEXIS 45277 (S.D.N.Y. May 28, 2009)............................................8

*Saylor v. Lindsley,* 456 F.2d 896 (2d Cir. 1972)........................................................................18

*Sewell v. Bovis Lend Lease LMB, Inc.*, 2012 U.S. Dist. LEXIS 53556
   (S.D.N.Y. Apr. 16, 2012).........................................................................................................8

*Spicer v. Pier Sixty LLC*, 2012 U.S. Dist. LEXIS 137409 (S.D.N.Y. Sept. 14, 2012)...................7

*Stefaniak v. HSBC Bank USA, N.A.,* 2008 U.S. Dist. LEXIS 53872
   (W.D.N.Y. June 28, 2008).......................................................................................................13

*Stieberger v. Sullivan,* 792 F. Supp. 1376 (S.D.N.Y. 1992).......................................................13

*Stieberger v. Sullivan,* 801 F. Supp. 1079 (S.D.N.Y. 1992) ......................................................13

*Strougo v. Bassini,* 258 F. Supp. 2d 254 (S.D.N.Y. 2003) ..................................................16, 18

*Torres v. Gristede's Operating Corp.,* 2010 WL 5507892 (S.D.N.Y. Dec. 21, 2010)................12

*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011)...........................................................17

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.,* 396 F.3d 96 (2d Cir. 2005) ......................................11

*Wolfert v. Transamerica Home First*, 439 F.3d 165 (2d Cir. 2006)..........................................24

*Zivali v. AT&T Mobility, LLC*, 784 F. Supp. 2d 456 (S.D.N.Y. 2011)..........................................17

*Zulauf v. Amerisave Mortg. Corp.*, 911 F. Supp. 2d 1266 (N.D. Ga. 2012)..............................17

**Statutes, Rules , and Regulations**

28 U.S.C. § 1715 ........................................................................................................ 10

Fed. R. Civ. P. 23 ................................................................................................ *passim*

New York Labor Law § 650 ........................................................................................ 2

**Other Authorities**

HERBERT B. NEWBERG & ALBA CONTE, NEWBERG ON CLASS ACTIONS (4th ed. 2002) ......... 9, 11, 19

MANUAL FOR COMPLEX LITIGATION (FOURTH) (2004) ................................................. 12

## <u>INTRODUCTION</u>

After over three years of time, effort, and resources from the parties, named Plaintiffs Philips Amador ("Amador"), Sylvester Cetina ("Cetina"), and Joann Sunkett ("Sunkett") (collectively, the "Named Plaintiffs"), individually and on behalf of others similarly situated, and Defendants Morgan Stanley & Co. LLC f/k/a Morgan Stanley & Co. Incorporated, Morgan Stanley Smith Barney LLC, and Morgan Stanley (collectively the "Defendants" or "Morgan Stanley") have agreed to settle.  The parties achieved this result by a comprehensive process of meeting and conferring throughout the case, conducting discovery, participating in a settlement conference before the Honorable Andrew J. Peck, conducting a mediation before Mark Rudy, Esq., and negotiating at arms-length to structure the settlement now proposed to the Court.

Under this negotiated settlement, Plaintiffs and the proposed Settlement Classes' members will release all Fair Labor Standards Act ("FLSA") and state law wage and hour claims.  In exchange for this release, and subject to the conditions set out in the Joint Stipulation of Settlement and Release (the "Settlement Agreement"), Defendants have agreed to pay a total settlement amount not to exceed $4,200,000.  Plaintiffs' Counsel, experienced in wage and hour collective and class litigation, believe that the proposed settlement is fair and adequate to their clients and to members of the Settlement Classes.

As is the case with virtually every true compromise, this settlement is not a complete victory for either side, but is, instead, the product of hard-fought litigation and well-informed negotiations between the Parties' counsel.  In reaching this agreement, counsel for both sides recognize it is more advantageous to settle this matter now and on the terms reached than to continue with the litigation.  Accordingly, Plaintiffs respectfully request that the Court grant preliminary approval of the proposed settlement.  Defendants do not oppose this request.

## BACKGROUND

This case was commenced on June 27, 2011, and after amendments to the Original Complaint and initial procedural delays, the Named Plaintiffs, who worked as Client Services Associates ("CSAs") at Morgan Stanley Wealth Management's retail brokerage branches, filed the Third Amended Collective and Class Action Complaint (the "Complaint") on February 3, 2012 (the "Action").  As relevant here, they allege that even though Defendants classified them as non-exempt employees thus entitling them to be paid for all hours worked above 40 in a workweek, Defendants nevertheless improperly failed to pay them and other CSAs premium pay for all overtime they worked contrary to the overtime requirements of the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.* ("FLSA"), and New York State's Labor Law, §§ 650, *et seq.* ("NYLL").  On behalf of these CSAs, the Named Plaintiffs in the Action seek certification of an opt-in collective action under the FLSA and Cetina seeks certification of an opt-out class action under Fed. R. Civ. P. 23 based on New York state wage and hour laws.  Defendants deny that its CSAs were improperly paid and that litigation classes may properly be certified.

Discovery began in earnest after the initial conference before the Judge Buchwald on March 28, 2012 (the case was later reassigned to Your Honor).  The initial phase, addressing conditional certification issues and the merits of Plaintiffs' individual claims, consisted of written discovery through interrogatories and RFPs, exchange and analysis of thousands of pages of documents, as well as the depositions of the three Named Plaintiffs and four of the opt-ins, Adrienne McGrath ("McGrath"), David Scott Pierce ("Pierce"), Jodi Goldman ("Goldman"), Marlene Roberts ("Roberts"), and Melynda Monfils ("Monfils").  *See* Declaration of Seth R. Lesser ¶ 4 ("Lesser Dec.").  In addition, the parties engaged in conferrals about difficult discovery issues pertaining to collective action certification, including substantial negotiations

over an ESI protocol, which resulted in the voluminous exchange of electronic information. *Id*. After initial discovery was completed, Plaintiffs moved for conditional certification pursuant to 29 U.S.C. § 216(b), which was granted on February 7, 2013.

Notice was mailed to 8,300 putative collective action members, of whom approximately 11% joined. *See id*. ¶ 5. This case thus involves the claims of 865 current or former Morgan Stanley CSAs who are asserting that they were not paid for all overtime wages owed. This number does not count those associated with the putative New York state class claim. *See id*.

On June 4, 2013, the Court issued a second-phase discovery order, setting a December 15, 2013 discovery cut-off. The Parties agreed to 50 opt-ins for written discovery and 30 opt-ins for deposition. *See id*. ¶ 6. To date, while Parties have exchanged copious amounts of written discovery, these depositions did not take place because, instead, the parties began settlement discussions. *See id*. Prior to the discovery deadline and after a fruitful, but unsuccessful, settlement conference with Magistrate Judge Peck, the parties decided to continue their settlement efforts, this time using a private mediator, and jointly moved to stay the case, which was granted on December 4, 2013. Even though the case was stayed, the parties continued to share discovery, including time records, payroll records, and Opt-In Plaintiff emails to further inform the parties of the records existing vis-à-vis the off-the-clock claims in the case.

Thereafter, the parties agreed to use Mark Rudy, Esq., an exceedingly experienced and respected mediator in wage and hour litigation, before whom the Parties conducted a full day mediation on February 5, 2014. *See id*. ¶ 8. Although settlement was not reached at the mediation, with the aid of Mr. Rudy and substantial continued negotiation back and forth, the parties were subsequently able to reach a settlement in principle, agreeing on certain material terms and the settlement amount. The parties then negotiated and agreed to a proposed

Settlement Agreement (Lesser Dec. Ex. 1).  By this Motion, Plaintiffs seek, and Defendants do not oppose, preliminary approval of the Settlement, which resolves the claims here.

## SUMMARY OF THE SETTLEMENT TERMS

Below, we set forth the most pertinent and material terms of the Settlement Agreement.

## I.      The Settlement Classes

The Settlement's provisions are modeled on others that have been approved in this Court and in this Circuit, including others that are materially, in form, identical.  The Settlement Agreement defines two Settlement Classes:

(a)      The Federal Class (or "FLSA Collective") shall include the Named Plaintiffs and all individuals employed as CSAs by Defendants in any state in the United States who have filed timely consents to join the Action.

(b)      The State Class (or "New York Class") shall include all individuals employed as CSAs in the State of New York by Defendants at any time from July 29, 2005 through the date of preliminary approval or October 17, 2014, whichever is earlier.

To resolve all the claims in the case, the Settlement Agreement ("Exhibit 1" (Lesser Dec. Ex. 1)) encompasses both the FLSA claims, in the form of a collective action settlement (the "Federal Class"), and the New York state law claims in the form of a Rule 23 settlement (the "State Class") (collectively, the "Settlement Classes").  Federal district courts in other, similar "off-the-clock" wage and hour cases have approved this form of settlement.

## II.     The Settlement Fund

Defendants have agreed to create a Settlement Fund (the "Maximum Settlement Amount") in the amount of $4,200,000.00 to settle the claims of the Settlement Classes.  From this amount will be deducted court-approved attorneys' fees and expenses for Class Counsel (*see* section VIII, below), court-approved enhancement payments for the Named Plaintiffs and the opt-ins who gave depositions in this matter (all of whom substantially assisted counsel) (*see*

section IX below), a reserve fund to be used to cover disputed and/or untimely claims (*see* section V below), and costs of a Claims Administrator (*see* section XI below) (the remaining funds are referred to as the "Net Settlement Amount").  Payments to the Settlement Class members (the "Individual Settlement Amounts") will be distributed from the Net Settlement Amount as described in sections III, VII below.  All taxes and tax expenses normally withheld from an individual's paycheck will be deducted from the Individual Settlement Amounts prior to distribution by the Claims Administrator.[1]  Defendants will fund the Maximum Settlement Amount within fifteen (15) days after the later of final Court approval, dismissal of this case and entry of judgment, and the running of all time for appeals.  *See* Lesser Dec. Exhibit 1 at ¶ 3.1(B).

III.    **Notice and Distribution of Individual Settlement Amounts**

Settlement notice to the Settlement Classes will be by a single mailing using First Class U.S. Mail with re-mailing of notices to instances where the initial mailing was returned.  The notices will specify the amount that each Settlement Class member is likely to receive (assuming approval of the applications for attorneys' fees, costs and enhancement awards).  If available, e-mail notice to any member of the Settlement Classes will proceed if the U.S. mail attempts are returned.  Following approval settlement checks, with printed releases on the reverse side, will be sent to the Federal Class members – all of whom opted-into this case.  Settlement checks will be sent to the State Class members should they submit a valid, timely claim form and release.

V.    **Reserve Fund**

Given experience that has invariably resulted in late claimants who otherwise would be unpaid, the Parties have to a $100,000.00 Reserve Fund to be used to pay late claims, disputed allocations, and claims of State Class members who were not sent notice but who come forward

---

[1] Defendants shall pay their portion of employee payroll taxes in addition to the Settlement Fund.

and provide proof that they should have been noticed ("Additional State Class Members").  If the total value of the net allocations of the Additional State Class Members exceeds 3% of the Net Settlement Amount for the State Class, the Defendants may, in their sole discretion, choose either to pay the net allocations of any individual Additional State Class Members who exceed the 3% mark or not to pay such net allocations.  If Defendants elect not to pay the net allocations of any such individual Additional State Class Member, then such individual shall not be bound by the Settlement Agreement and/or releases therein.  Any amount of the reserve fund that is not used as described above shall be returned to the Defendants.  *See* Exhibit 1 at ¶ 3.5.

## V.     Releases

The Settlement Agreement provides that all members of the State Class who submit timely and valid claim forms and the Federal Class release all FLSA and state and local wage and hour and related claims. It also provides that members of the State Class who do not timely opt out release all New York wage and hour state and local claims and related claims through the earlier of this Court's preliminary approval of the Settlement or October 17, 2014.

## VI.     Class Certification

Solely for purposes of settlement, the Parties have agreed, subject to Court approval, for collective and class treatment of the Settlement Classes.  Defendants retain their right to object to certification of this action, or any other action, or any other class action under FED. R. CIV. P. 23 or any other applicable rule, statute, law, or provision, if the Settlement is not finally approved. *See* Exhibit 1 at ¶ 2.1.  Defendants make no admission of liability in this matter.

## VII.     Allocation Formula

Under the Settlement Agreement, each Federal Class member will receive an Individual Settlement Amount to be paid by check sent directly to such individual.  *See* Exhibit 1 at ¶ 3.7.

Each State Class member who returns a timely and valid claim form and who does not opt out

will receive an Individual Settlement Amount to be paid by check sent directly to such

individual.  Any unclaimed amounts of the Settlement Fund pertaining to State Class members

who do not submit claims will be returned to Defendants.  Based upon experience and in

conformity with the vast majority of FLSA settlements, Individual Settlement Amounts shall be

calculated under an allocation formula that considers the number of weeks each Class Member

was employed by Defendants as a CSA based on Defendants' records during the relevant time

periods.  The payments to Settlement Class members will vary proportionally, as each claimant

will receive a pro rata share of the net settlement amount based upon the time each was

employed as a CSA during the applicable period.  This method of calculating each Settlement

Class member's potential recovery will ensure a fair distribution of the settlement proceeds to the

participating members of the Settlement Classes.  *See* Exhibit 1 at ¶ 3.7(B).

## VIII.   Attorneys' Fees and Costs

Class Counsel intends to apply for an award of attorneys' fees and costs to be paid from

the $4,200,000 Settlement Fund.[2]  Defendant will not oppose a fee request that does not exceed

one-third of the Maximum Settlement Amount nor will they oppose a request that reasonable

costs be recovered from the Settlement Fund.[3]  *See* Exhibit 1 at ¶ 3.2.  Members of the

---

[2] In the event that the Court does not approve Plaintiffs' Counsels' requests for attorneys' fees
and costs and/or the enhancement payments described in sections VIII or IX, such occurrences
shall not affect the approval of the remainder of the Settlement, and any resulting excess funds
shall be re-distributed to the Settlement Classes in accordance with the allocation formula
described in section VII above.

[3] Although Plaintiffs' Counsels' fee application is not presently before the Court, this is the
almost universal fee award in wage and hour cases in this Circuit.  *See, e.g.*, *Capsolas v. Pasta
Res. Inc.*, 2012 U.S. Dist. LEXIS 144651 (S.D.N.Y. Oct. 5, 2012) (awarding 33.33% fee in $5.25
million settlement); *Spicer v. Pier Sixty LLC*, 2012 U.S. Dist. LEXIS 137409 (S.D.N.Y. Sept.
14, 2012) (awarding 33% fee in $8.5 million settlement); *Alli v. Boston Mkt. Corp.,* 10-cv-0004,
Order (D. Conn. Apr. 17, 2012) (awarding 33.33% fee in $3 million settlement); *deMunecas v.*

Settlement Classes can object to the fee request.  Prior to the final approval hearing, Class

Counsel shall submit their application for the requested award of fees and costs.

## IX.    Enhanced Payments to the Named Plaintiffs and Opt-in Plaintiffs Who Gave Depositions

Under the Settlement Agreement, in addition to their Individual Settlement Amounts,

Plaintiffs Amador, Cetina, and Sunkett will receive a payment of $10,000.00 each in recognition

of their services as putative collective and/or class representatives, an amount well in line with

precedent recognizing the value of individuals' stepping forward to represent such collectives

and/or classes.[4]  Opt-ins McGrath, Pierce, Goldman, Roberts and Monfils will receive a payment

of $7,500.00 each for their services to the case and the Settlement Classes, including but not

limited to giving depositions in this matter.  *See* Exhibit 1 at ¶ 3.3.  As with the attorneys' fee

and costs petition, an opportunity to object to this request is being made available to members of

---

*Bold Food, LLC*, 2010 U.S. Dist. LEXIS 87644, at *19 (S.D.N.Y. Aug. 23, 2010) (awarding 33% fee in $729,000 settlement); *Clark v. Ecolab*, 2009 U.S. Dist. LEXIS 76613, at * 27 (S.D.N.Y. May 11, 2010) (awarding one-third fee in $6 million settlement); *Duchene v. Michael Cetta, Inc.*, 2009 U.S. Dist. LEXIS 85955, at *8 (S.D.N.Y. Sept. 10, 2009) (awarding 32.2% fee in $3.15 million settlement); *Faican v. Rapid Park Holding Corp.*, 2010 U.S. Dist. LEXIS 64382, at *6 (E.D.N.Y. June 29, 2010) (awarding 33.3% fee in $522,000 settlement); *McMahon v. Olivier Cheng Catering and Events,* 2009 U.S. Dist. LEXIS 18913, at *18 (S.D.N.Y. Mar. 2, 2010) (awarding 33% fee in $400,000 settlement); *Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*, 2009 U.S. Dist. LEXIS 27899, at *16 (S.D.N.Y. Mar. 31, 2009) (awarding 33% fee in $3.265 million settlement); *Parker v. Jekyll & Hydye Entm't Holdings., L.L.C.*, 2010 U.S. Dist. LEXIS 12762, at *7 (S.D.N.Y. Feb 9, 2009) (awarding 33.3% fee in $745,000 settlement); *Prasker v. Asia Five Eight LLC*, 2010 U.S. Dist. LEXIS 1445, at *17 (S.D.N.Y. Jan. 4, 2010) (awarding 33% of $1.05 million settlement); *Reyes v. Buddha-Bar NYC*, 2009 U.S. Dist. LEXIS 45277, at *11 (S.D.N.Y. May 28, 2009) (awarding 33% fee in $710,000 settlement).

[4] Such service awards are routinely granted in wage and hour class actions.  *See, e.g.*, S*ewell v. Bovis Lend Lease LMB, Inc*., 2012 U.S. Dist. LEXIS 53556 (S.D.N.Y. Apr. 16, 2012) (granting service awards of $15,000 and $10,000 to class representatives in a wage and hour class action settlement); *Johnson v. Brennan*, 2011 U.S. Dist. LEXIS 105775 (S.D.N.Y. Sept. 16, 2011) (granting service awards of $10,000 to class representatives in a wage and hour settlement); *Reyes v. Altamarea Grp.,* 2011 U.S. Dist. LEXIS 115984 (S.D.N.Y. Aug. 16, 2011) (granting service awards of $15,000 and $5,000, to class representatives in wage and hour settlement).

the Settlement Classes.  Prior to the final approval hearing, Class Counsel shall submit the

formal application for these enhanced service payments.

**X.       Reservation of Rights**

      If the Settlement Agreement is not approved, or the Defendants withdraw from the

Settlement Agreement, then the Settlement Agreement shall be null and void with the exception

of the confidentiality provisions  and Defendants' non-admission of liability.  *See* Exhibit 1 at ¶¶

2.10, 2.11.

**XI.      Settlement Claims Administrator**

      Under the Settlement Agreement, The Garden City Group, Inc., a most experienced

claims administrator, particularly in the area of wage and hour settlements, will serve as

Settlement Claims Administrator.  All fees and expenses of Garden City Group, subject to Court

approval, will be paid from the Total Settlement Amount.  *See* Exhibit 1 at ¶¶ 2.1, 2.3.

**CLASS ACTION SETTLEMENT PROCEDURE**

      Judicial proceedings under FED. R. CIV. P. 23 follow a defined procedure and specific

criteria for settlement approval in class actions consisting of three distinct steps:

    (1)     Preliminary approval of the proposed settlement after submission to the Court of a written motion for preliminary approval and certification of settlement classes;

    (2)     Dissemination of mailed and/or published notice of settlement to all affected Class members; and

    (3)     A final settlement approval hearing at which class members may be heard regarding the settlement, and at which argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented.

*See* FED. R. CIV. P. 23(e); *see also* HERBERT B. NEWBERG & ALBA CONTE, NEWBERG ON CLASS

ACTIONS §§ 11.22, *et seq*. (4th ed. 2002) ("*Newberg*").  These procedures safeguard class

members' due process rights and enable the Court to act as the guardian of class interests.

With this motion, Plaintiffs request that the Court take the first step in this process by granting preliminary approval, provisionally certifying the Settlement Classes, approving the proposed notice (the "Settlement Notice"), and authorizing the Claims Administrator to send it.

Plaintiffs respectfully submit the following proposed schedule for final resolution for the Court's consideration and approval:

1.      Upon filing the Unopposed Motion for Preliminary Approval of Settlement of Collective and Class Action, Defendants will mail notices required under 28 U.S.C. § 1715.

2.      The parties will direct the Settlement Administrator to mail the Settlement Notice to Class Members within ten (10) days after receiving the notice lists from Defendants, which will occur after the Court grants the present motion..

3.      State Class Members who wish to opt out of the Settlement must submit a request for exclusion to the Settlement Administrator, postmarked no later than sixty (60) days from the date of the mailing of the Settlement Notice.

4.      Class Members who wish to object to the Settlement or the fee, cost or enhancement award applications must file their objections with the Court postmarked no later than sixty (60) days from the date of the mailing of the Settlement Notice.

5.      Plaintiffs will move for Final Approval of Settlement no later than seven (7) days before the Final Approval Hearing.  At that time, Class Counsel will move for the fee, cost, and enhancement award requests.

6.      The parties request, in order to conform with the Class Action Fairness Act notice requirements, that the Court schedule a fairness hearing at least 100 days after filing of the Unopposed Motion for Preliminary Approval of Settlement of Collective and Class Action.

7.      After the final fairness hearing, if the Court grants Plaintiffs' Motion for Final

10

Approval of the Settlement of Collective and Class Action, the Court will issue a Final Order and

Judgment.  If no appeal is taken from the Court's Final Order and Judgment, the "Effective

Date" of the Settlement will be forty-five (45) days after the Court enters its Final Order and

Judgment.  If an appeal is taken from the Court's Final Order and Judgment, the "Effective Date"

of Settlement shall occur fifteen (15) days after the final disposition of any appeal that has the

effect of affirming the final approval order in its entirety.

      8.     The Settlement Claims Administrator will disburse settlement checks.

**ARGUMENT**

**I.     The Court Should Grant Preliminary Approval of the Proposed Settlement**

     **A.     The Legal Standards for Preliminary Approval**

     The law favors compromise and settlement of class action suits.  *Wal-Mart Stores, Inc. v.*

*Visa U.S.A. Inc.,* 396 F.3d 96, 116-17 (2d Cir. 2005) (noting the "strong judicial policy in favor

of settlements, particularly in the class action context") (internal quotation marks omitted); *In re*

*Warfarin Sodium Antitrust Litig.,* 391 F.3d 516, 535 (3d Cir. 2004) ("there is an overriding

public interest in settling class action litigation, and it should therefore be encouraged").  This is

especially true in complex class action litigation.  *Newberg* § 11.41 ("The compromise of complex

litigation is encouraged by the courts and favored by public policy.").  Courts encourage

settlement of aggregate litigation and class actions, when warranted, because early settlement

allows class members to recover without unnecessary delay and allows the judicial system to

focus its resources elsewhere.  *See Castagna v. Madison Square Garden*, L.P., 2011 U.S. Dist.

LEXIS 64218 (S.D.N.Y. June 7, 2011).

     The court must approve a settlement of a class action as "fair, reasonable, and adequate."

*See* Fed. R. Civ. P. 23(e); *see also Polar Int'l Brokerage Corp. v. Reeve,* 187 F.R.D. 108, 112-13

11

(S.D.N.Y. 1999).  Review of a proposed class action settlement is generally a two-step process: preliminary approval, in which the court reviews the proposed terms of the settlement and makes a preliminary determination on the fairness, reasonableness and adequacy of the settlement terms, and a subsequent "fairness hearing." *In re IPO Sec. Litig.*, 243 F.R.D. 79, 87 (S.D.N.Y. 2007) (*citing* MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.632 (2004)).

Ascertaining the fairness of a proposed settlement is left to the sound discretion of the trial court.  *Maywalt v. Parker & Parsley Petroleum Co.,* 67 F.3d 1072, 1079 (2d Cir. 1998). When exercising its discretion, the court reviews the proposed settlement in light of the strong judicial and public policies that favor settlements.  *In re Sumitomo Copper Litig.,* 189 F.R.D. 274, 280 (S.D.N.Y. 1999).  There is a strong initial presumption that a settlement negotiated during litigation is fair and reasonable.  *Chatelain v. Prudential-Bache Sec., Inc.,* 805 F. Supp. 209, 212 (S.D.N.Y. 1992).  "Absent evidence of fraud or overreaching, [courts] consistently have refused to act as Monday morning quarterbacks in evaluating the judgment of counsel."  *Trief v. Dun & Bradstreet Corp.,* 840 F. Supp. 277, 281 (S.D.N.Y. 1993).

In determining whether a settlement is fair, reasonable and adequate, courts in this Circuit look to the nine "*Grinnell* factors," which are:  (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class through trial; (7) the ability of the defendant to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.  *City of Detroit v. Grinnell Corp.,* 495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds by Goldberger v.*

*Integrated Res., Inc.,* 209 F.3d 43 (2d Cir. 2000).  In approving FLSA settlements, courts have

considered factors similar to those employed in the Rule 23 context, namely whether the

settlement reached resulted from contested litigation and whether it represents a fair and

adequate resolution.  *See Lynn's Food Stores, Inc. v. United States,* 679 F.2d 1350, 1353 n.8

(11th Cir. 1982); *Mohney*, 2009 U.S. Dist. LEXIS 27899; *Stefaniak,* 2008 U.S. Dist. LEXIS

53872; *Clark*, 2010 U.S. Dist. LEXIS 47036; *McMahon*, 2010 U.S. Dist. LEXIS 18913.

The *Grinnell* factors applicable at this preliminary approval stage, which include the

factors used to assess FLSA settlements, weigh in favor of the proposed settlement.[5]

**B.      The Proposed Settlement Is Fair, Reasonable, and Adequate Considering the
Complexity, Expense, and Likely Duration of the Litigation, the Stage of the
Proceedings, and the Amount of Discovery Completed**

**1.      Complexity, Expense, and Likely Duration of the Litigation**

The issues in this wage-and-hour case are complex and have been contested on a serious

level, resulting in time and expense to the parties and their counsel.  By reaching a favorable

settlement before dispositive motions or trial, Plaintiffs seek to avoid any additional expense and

delay, and ensure recovery for the Settlement Classes.  "Most class actions are inherently

complex and settlement avoids the costs, delays and multitude of other problems associated with

them."  *In re Austrian & German Bank Holocaust Litig.,* 80 F. Supp. 2d 164, 174 (S.D.N.Y.

2000), *aff'd,* 236 F.3d 78 (2d Cir. 2001).  Here, the "compromises represented [in a settlement]

constitute a reasonable balance, especially bearing in mind the length of time that would elapse,

absent a settlement, before any concrete benefits could be delivered to any class member").

*Stieberger v. Sullivan,* 792 F. Supp. 1376, 1377 (S.D.N.Y. 1992), *modified*, 801 F. Supp. 1079

(S.D.N.Y. 1992).  Although the Parties have already undertaken time and expense in litigating

---

[5] Factor 2 (the class's reaction ) is applicable at the final approval stage, not now.

this matter, barring a settlement, the Parties expect to engage in extensive motion practice --

there would likely be motions for class and/or final collective action certification, motions

for decertification, dispositive motions, and oppositions to such motions.  Additional

discovery would have been required to establish liability and damages, including depositions

and more document productions and reviews.  To establish the Plaintiffs' claims and

Defendants' defenses, including the applicability of various exemptions to federal and state

wage and hour laws, a complicated trial could be necessary, featuring extensive testimony by

Defendants' managers and executives (many of whom are located out of state), the Named

Plaintiffs, FLSA collective and class members, and possibly extensive expert testimony.

Preparing and presenting testimonial and documentary evidence regarding the complex factual

and legal issues at such a trial would have consumed tremendous amounts of time and resources

for both sides, and required substantial judicial resources to adjudicate the parties' disputes.  A

trial of the liability and damages issues would have been costly and would have further delayed

resolution.  Any judgment could be appealed, thereby extending the duration of the litigation.

If Plaintiffs prevailed at trial and on appeal, it could nevertheless have taken years for the

Settlement Class Members to recover a monetary judgment.  This Settlement, on the other

hand, makes monetary relief available to the Settlement Class Members in a prompt and efficient

manner.  Therefore, the first *Grinnell* factor weighs in favor of preliminary approval.  This and

other courts have approved similarly structured settlements comprising a multi-state FLSA

collectives and a single Rule 23 Class.  *See, e.g., Ogaian v. Bed Bath & Beyond, Inc.*, No. 12-cv-

01273 (PAC) (S.D.N.Y.) (final approval of a similarly structured, yet broader multi-state, hybrid

settlement granted on June 4, 2014); *Jenkins v. TSA Stores, Inc.,* No. 09-cv-02224 (JFB) (ETB)

(E.D.N.Y (similarly structured, yet broader multi-state, settlement approved on September 30,

2011); *Caissie v. BJ's Wholesale Club, Inc.*, No. 08-cv-30220 (MAP) (D. Mass) (similarly structured, yet broader multi-state, settlement approved on June 24, 2010).

###### 2.       Stage of Proceedings and Amount of Discovery Completed

Although preparing this case through trial would require many hundreds more hours of discovery and pretrial work (a point which Plaintiffs' Counsel can state with certainty having been one of the few counsel to have litigated an FLSA collective action through to a jury trial), the parties have exchanged significant information and counsel is able to recommend settlement. Lesser Dec. ¶¶ 9-10.  The proper question is "whether counsel had an adequate appreciation of the merits of the case before negotiating."  *Warfarin,* 391 F.3d at 537.  "The pretrial negotiations and discovery must be sufficiently adversarial that they are not designed to justify a settlement . . . [but] an aggressive effort to ferret out facts helpful to the prosecution of the suit." *In re Austrian,* 80 F. Supp. 2d at 176 (internal quotation marks omitted).  Here, the information produced and discovery exchanged was sufficiently adversarial and part of "an aggressive effort" to learn the facts and circumstances and exceeds the required standard.

###### C.       The Proposed Settlement Is Fair, Reasonable, and Adequate Given the Risks of Establishing Liability and Damages

To continue this matter through the end of a trial would expose both sides to significant risks.  Although Plaintiffs believe their case is strong, it is subject to considerable risk as to both liability and damages.  In weighing the risks of establishing liability and damages, the Court "must only weigh the likelihood of success by the plaintiff class against the relief offered by the settlement."  *In re Austrian,* 80 F. Supp. 2d at 177 (quotation marks omitted).  A trial on the merits would involve significant risks to Plaintiffs because of the fact-intensive nature of proving liability under the FLSA and state wage and hour laws, and in light of the substantial defenses available to Defendants.  Despite Plaintiffs' belief in their claims, Plaintiffs' Counsel are

experienced and realistic, and understand that the resolution of liability issues, the outcome of the trial, and the inevitable appeals process are inherently uncertain.  The proposed settlement alleviates this uncertainty.  This factor weighs heavily in favor of preliminary approval.

Even if liability could be established, uncertainties exist as to the fact and amount of damages.  Damages would be hotly disputed and the subject of "dispute between [the] experts [retained by the parties], a dispute whose outcome is impossible for [the Court] to predict."  *In re RJR Nabisco Sec. Litig.,* 1992 U.S. Dist. LEXIS 12702 (S.D.N.Y. Aug. 24, 1992); *see also In re Warner Commun. Sec. Litig.,* 618 F. Supp. 735 (S.D.N.Y. 1985), *aff'd,* 798 F.2d 35 (2d Cir. 1986) ("Undoubtedly, expert testimony would be needed to fix not only the amount, but the existence, of actual damages. . . .  In this 'battle of experts,' it is virtually impossible to predict with any certainty which testimony would be credited . . .") (citations omitted).

Uncertainty concerning trial risks could result in little or no recovery after trial.  But even the possibility that the class "might have received more if the case had been fully litigated is no reason not to approve the settlement."  *Granada Invest., Inc. v. DWG Corp.,* 962 F.2d 1203, 1206 (6th Cir. 1992) (quotation omitted).  The proposed settlement "provides for relief now, not some wholly speculative payment of a hypothetically larger amount years down the road." *Strougo v. Bassini,* 258 F. Supp. 2d 254, 260 (S.D.N.Y. 2003).  Under these circumstances, it is proper for the parties "to take the bird in the hand instead of the prospective flock in the bush." *Oppenlander v. Standard Oil Co.,* 64 F.R.D. 597, 624 (D. Colo. 1974).

### D.    Establishing a Class and Maintaining it Through Trial Would Not Be Simple

The risk of maintaining the class (or, indeed, a collective action) status through trial is also present.  Since the Court has only conditionally certified the Federal Class, Plaintiffs would certainly move for final certification of both the Federal and State Classes, and Defendants would in all

likelihood move for decertification and/or oppose such motions.  Case after case has shown the

substantial difficulty and litigation risk in maintaining an off-the-clock collective action or

obtaining a Rule 23 certification for such a case, as is exemplified by (among others), *Zivali v.*

*AT&T Mobility, LLC*, 784 F. Supp. 2d 456 (S.D.N.Y. 2011) (decertifying off-the-clock claim); *see*

*also*, *e.g.*, *Zulauf v. Amerisave Mortg. Corp.*, 911 F. Supp. 2d 1266 (N.D. Ga. 2012) (same); *Diaz*

*v. Electronics Boutique of Am., Inc.*, 2005 U.S. Dist. LEXIS 30382 (W.D.N.Y. Oct. 13, 2005)

(denying certification at first stage; applying a second-stage analysis); *Wal-Mart Stores, Inc. v.*

*Dukes*, 131 S. Ct. 2541, 2551 (2011) (recognizing that "[w]hat matters to class certification ... is

not the raising of common 'questions' – even in droves – but, rather the capacity of a classwide

proceeding to generate common *answers* apt to drive the resolution of the litigation") (emphasis in

original).  And, irrespective of how these determinations are decided, Plaintiffs are well aware

from experience that a determination would be reached only after intense, exhaustive briefing and

argument by both parties.  Further, the possibility of Defendants seeking permission to file an

interlocutory appeal under FED. R. CIV. P. 23(f) is always present (and such motions are quite

often made in Class Counsel's experience).  Risk, expense, and delay permeate such a process.

Settlement eliminates this risk, expense, and delay.  This factor favors preliminary approval.

> **E.    The Settlement Fund is Substantial, Even in Light of the Best Possible Recovery and the Attendant Risks of Litigation, the "Ability of Defendants to Withstand a Greater Judgment" and the "Reasonableness of the Proposed Settlement" Factors Support Approval of the Proposed Settlement**

Plaintiffs' Counsel has determined that this case presents risks that militate toward

compromise.  Defendants have agreed to settle this case for $4,200,000.  The resulting average

settlement amount available to each Federal Class Member and State Class Member who submits

a timely and valid claim would be approximately $1,100, net of attorneys' fees and other items.[6]

"The determination of a 'reasonable' settlement is not susceptible to a mathematical

equation yielding a particularized sum." *Strougo*, 258 F. Supp. 2d at 260.  Rather, "'there is a

range of reasonableness with respect to a settlement….'" *Id.* (quoting *Newman v. Stein,* 464 F.2d

689, 693 (2d Cir. 1972)). "In evaluating the proposed settlement, the court is not to compare its

terms with a hypothetical or speculative measure of a recovery that might be achieved by

prosecution of the litigation to a successful conclusion." *Republic Nat'l Life Ins. Co. v. Beasley,*

73 F.R.D. 658, 668 (S.D.N.Y. 1970).  Instead, "[d]ollar amounts are judged … in light of the

strengths and weaknesses of plaintiffs' case." *In re Union Carbide Corp. Consumer Prods. Bus.*

*Sec. Litig.,* 718 F. Supp. 1099, 1103 (S.D.N.Y. 1989); *see also Grinnell*, 495 F.2d at 468 (*citing*

*Saylor v. Lindsley,* 456 F.2d 896, 904 (2d Cir. 1972) ("The evaluation of a proposed settlement

requires an amalgam of delicate balancing, gross approximations and rough justice.")).

## II.     The Classes Should Be Certified For Settlement Purposes

The Federal Class consists of the Named Plaintiffs and all individuals employed as CSAs

by Defendants who filed timely consents to join the Action.  The Court has already conditionally

certified this collective so a settlement-only certification is not required at this point.  As to the

State Class, it is a Rule 23 class of all individuals employed as CSAs in the State of New York

by Defendants from July 29, 2005 through the date of preliminary approval or October 17, 2014,

whichever is earlier.[7]  As next shown, all the Rule 23(a) and (b)(3) certification requirements for

---

[6] The ability of Morgan Stanley to withstand a judgment here does not, alone, suggest that the settlement is unfair. *See Torres*, 2010 WL 5507892, at *6.

[7] Although Defendants support settlement of this matter as both a class and collective action, they take no position on whether each of the requirements for class certification of the Rule 23 class have been met or whether the FLSA collective action could have remained certified at a second-

settlement purposes are met for the proposed State Class, and ,thus, the FLSA certification requirements are met for the Federal Class. *See Newberg* § 11.27 ("When the court has not yet entered a formal order determining that the action may be maintained as a class action, the parties may stipulate that it be maintained as a class action for the purpose of settlement only."); *Cnty. of Suffolk v. Long Island Lighting Co.,* 710 F. Supp. 1422, 1424 (E.D.N.Y. 1989) ("It is appropriate for the parties to a class action suit to negotiate a proposed settlement of the action prior to certification of the class."), *aff'd,* 907 F.2d 1295 (2d Cir. 1990).

### A.   The Rule 23(a) Factors Are Met

#### 1.   Numerosity

One of the prerequisites to a class action is that the class must be "so numerous that joinder of all members is impracticable." FED. R. CIV. P. 23(a)(1).  The word "impracticable" is key.  As the Second Circuit has explained, the numerosity requirement "does not mandate that joinder of all parties be impossible — only that the difficulty or inconvenience of joining all members of the class ma[kes] use of the class action appropriate." *Central States Southeast v. Merck-Medco,* 504 F.3d 229, 244-45 (2d Cir. 2007); *see also Goldstein v. North Jersey Trust Co.,* 39 F.R.D. 363, 367 (S.D.N.Y. 1966) (explaining that "impracticable" does not mean "incapable of being performed" or "infeasible").

Here, the proposed State Class consists of over 1,500 individuals who were employed by Defendant in the State of New York in the capacity of CSAs during the applicable limitations periods.  For purposes of settlement, Plaintiffs contend that the joining of all of these individuals in a single suit is impracticable. *Cf. Robidoux v. Celani,* 987 F.2d 931, 936 (2d Cir. 1993)

---

stage determination, and expressly reserves the right to oppose certification of any litigation class in this or any other matter, on any grounds, in the event that the Settlement is not finalized.  The argument set forth in this Section, concerning the propriety of class action certification, is submitted by Plaintiff only, and is not joined by Defendant.

(noting that relevant considerations for "impracticability" include "judicial economy arising from the avoidance of a multiplicity of actions, geographic dispersion of class members, financial resources of class members, [and] the ability of claimants to institute individual suits….") (citation omitted).  Rule 23(a)'s numerosity requirement is satisfied.

### 2.    Commonality and Typicality

Rule 23(a)'s commonality requirement is met if plaintiff's grievances share a common question of law or of fact, *see In re Agent Orange Prod. Liab. Litig.,* 818 F.2d 145, 166-67 (2d Cir. 1987), while typicality is satisfied "when each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability."  *Marisol A. v. Guiliani*, 126 F.3d 372, 376 (2d Cir. 1997) (internal quotations omitted). In practice, Rule 23(a)'s commonality and typicality criteria "tend to merge' because '[b]oth serve as guideposts for determining whether … the named plaintiff's claim and the class claims are so inter-related that the interests of the class members will be fairly and adequately protected in their absence."  *Caridad v. Metro-N. Commuter R.R.,* 191 F. 3d 283, 291 (2d Cir. 1999).

At issue in this case is Defendants' alleged common policy and practice of depriving CSAs of compensation for all overtime worked.  Plaintiffs contend that Plaintiffs' and Class Members' claims share common questions of law and fact, arise from the same course of events, and rely on similar legal arguments to support liability.  The claims of the Named Plaintiffs, themselves CSAs during the relevant periods, and those of the Settlement Class Members are so interrelated that the interests of the absent Settlement Class Members are fairly protected.

### 3.    Adequacy

An examination of adequacy under Rule 23(a) has two aspects:  the proposed class representative must have an interest in vigorously pursuing the claims of the class, and she must

have no interests antagonistic to the interests of the other class members.  *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.,* 222 F.3d 52, 60 (2d Cir. 2000); *Toure v. Cent. Parking Sys.*, 2007 U.S. Dist. LEXIS 74056, at *18-19 (S.D.N.Y. Sept. 28, 2007).  A conflict or potential conflict "must be fundamental" and go to the very subject matter of the litigation to defeat certification. *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 36 (2d Cir. 2009) (*quoting In re Visa Check/MasterMoney Antitrust Litig.,* 280 F.3d 124, 145 (2d Cir. 2001)).

Plaintiffs contend that, given the interrelatedness of the Class Representatives' and Class Members' claims, the Class Representatives have every incentive to pursue the Class Members' claims vigorously.  Nor does any conflict exist between the interests of the Class Representatives and the Class Members, much less a "fundamental" conflict that would defeat class certification. While the claims of the proposed Class Representatives may not be identical to every claim of every putative Class Member, the proposed Class Representatives can adequately represent the putative Class.  *See Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 182 (W.D.N.Y. 2005).

Plaintiffs also contend that Plaintiffs' counsel also meet the adequacy requirement of Rule 23(a)(4).  Both Klafter Olsen & Lesser LLP and Shavitz Law Group, P.A. have exceedingly substantial experience prosecuting and settling wage and hour class actions and have litigated, tried and settled numerous such cases.  *See* Lesser Dec. ¶¶ 14-15 & Exhibits 2 & 3.[8]

---

[8] KOL, for instance, has in recent years successfully litigated to conclusion over two dozen FLSA/state wage and hour cases and settlements that, to date, constitute over $150 million in value. This includes *Stillman v. Staples, Inc.*, 07-cv-849 (D.N.J.) (*"Staples"*), a FLSA wage and hour case that was successfully tried to a jury verdict on behalf of a collective of 342 opt-ins and which case is one of the rare FLSA misclassification cases that has, at least in recent years, been successfully tried to a jury verdict for plaintiffs. That trial, which, even pursuant to an expedited schedule, occurred nearly two years after the filing of the case, consumed six weeks of time, cost hundreds of thousands of dollars and presented innumerable contested issues of both law and fact.  Ultimately, the case resulted in an omnibus settlement totaling $42 million, *In re Staples Wage & Hour Litigation*, MDL No. 2025 (D.N.J.).  In addition, included in the cases in which it has acted as the lead counsel are the largest FLSA/state wage and hour settlements in the District

B.       **The Rule 23(b)(3) Factors Are Met**

Rule 23(b)(3) permits class certification "if the court finds that the questions of law or

fact common to the members of the class predominate over any questions affecting only

individual members, and that a class action is superior to other available methods for the fair and

efficient adjudication of the controversy."  This Rule "encompasses those cases in which a class

action would achieve economies of time, effort, and expense, and promote uniformity of decision

as to persons similarly situated, without sacrificing procedural fairness or bringing about other

undesirable results."  Fed. R. Civ. P. 23(b)(3) advisory committee's note to 1966 amend.

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently

cohesive to warrant adjudication by representation."  *Amchem v. Windsor Prods.*, 521 U.S. 591,

623 (1997).  Plaintiffs must demonstrate that "the issues in the class action that are subject to

generalized proof, and thus applicable to the class as a whole … predominate over those issues

that are subject only to individualized proof."  *Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards &

Sons, Inc.*, 502 F.3d 91, 107-08 (2d Cir. 2007) (internal quotation omitted).  Where plaintiffs are

"unified by a common legal theory" and by common facts, the predominance requirement is

satisfied.  *McBean v. City of New York*, 228 F.R.D. 487, 502 (S.D.N.Y. 2005).

The second part of the Rule 23(b)(3) analysis examines whether "the class action device

[is] superior to other methods available for a fair and efficient adjudication of the

---

of New Jersey (the *Staples* litigation), in the First Circuit (*Nash v. CVS*, 09-cv-079 (D.R.I.) ($34
million settlement) (Shavitz Law Group was another lead counsel), the Middle District of
Pennsylvania (*Craig v. Rite Aid Corp.*, 08-cv-2317 (M.D. Pa.) ($20.9 million settlement)), and
the District of Massachusetts (*Caissie v. BJ's Wholesale Club*, 08-cv-30220 (D. Mass.) ($9.3
million settlement)).  KOL has also tried another FLSA collective action to a successful verdict,
a case which, by virtue of having been tried in an arbitration forum, has the details protected
from disclosure as confidential.  However, it is rare for a law firm to have tried one, much less
two, FLSA collective actions to successful verdict.  The Shavitz Law Group is also exceedingly
experienced in litigating wage and hour cases, including such cases as that here, as is set forth in
the Declaration of Gregg Shavitz (Lesser Dec. Exhibit 3).

controversy." *Green v. Wolf Corp.,* 406 F.2d 291, 301 (2d Cir. 1968).  Rule 23(b)(3) sets forth a

non-exclusive list of factors pertinent to judicial inquiry into superiority, including: whether

individual class members wish to bring, or have already brought, individual actions; and the

desirability of concentrating the litigation in the particular forum. FED. R. CIV. P. 23(b)(3).[9]

Plaintiffs submit that the requirements of Rule 23(b)(3) are met because a settlement

class that will determine the issues common to all Class Members and fix compensation for

alleged injury is far superior to numerous trials that risk disparate results for similarly situated

individuals.  Litigation on a case-by-case basis would be extremely costly for Plaintiffs and the

Class Members, and piecemeal litigation would tax the resources of the judiciary.  Accordingly,

Plaintiffs contend that a class action is superior to other available methods for the fair and

efficient adjudication of the present controversy.  No other member of the Settlement Classes

has brought individual, class, or collective actions related to the matters contested here.  Finally,

Defendants' agreement to pay the valid and timely claims of Class Members on a pro rata basis

from the Net Settlement Amount eliminates any possible predominance of individual issues.

For all the reasons stated above, the Settlement Classes meet the requirements of Rule

23(a)(1) and (b)(3) and certification for settlement purposes should be granted.

### III.   The Proposed Notice to the Class Members Is Adequate and Satisfies Due Process

Rule 23(e)(1) provides that "[t]he court must direct notice in a reasonable manner to all

class members who would be bound by a proposed settlement." This requires adequacy of a

settlement notice in a class action to be "measured by reasonableness":

---

[9] The manageability at trial factor is not of consequence in the context of a proposed settlement.  *See Amchem,* 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial").

> There are no rigid rules to determine whether a settlement notice to the class satisfies constitutional or Rule 23(e) requirements; the settlement notice must fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings.  Notice is adequate if it may be understood by the average class member.

*Masters v. Wilhelmina Model Agency, Inc.,* 473 F.3d 423, 438 (2d Cir. 2007) (quotations omitted).

The proposed Settlement Notice forms provide information on the nature of the proposed Settlement Classes; the terms of the proposed Settlement; the amount of the settlement; the fact that Class Counsel will receive attorneys' fees and the Named Plaintiffs and opt-ins who gave depositions will receive enhancement payments; and the procedures and deadlines for objecting to, commenting on, or being excluded from, the settlement.  Lesser Dec. Ex. 1, Exs. D, E & F.

The Settlement Notice forms (with attached Consent to Join and Claim Forms for State Class members) will be sent via first class mail to all Settlement Class Members with follow-up procedures for handling returned mail.  *See Wolfert v. Transamerica Home First*, 439 F.3d 165, 176 (2d Cir. 2006) (approving use of first-class mail as means of providing notice to class).  Thus, both the contents of the Settlement Notice and the methods of communicating it are more than adequate to satisfy due process.

**IV.    Plaintiffs' Counsel Should Be Appointed Class Counsel**

The lawyers representing the Plaintiffs, Klafter Olsen & Lesser LLP and Shavitz Law Group, P.A., should be appointed as Class Counsel.  Rule 23(g) sets forth four criteria the district court must consider in evaluating the adequacy of proposed counsel: (1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action; (3)

counsel's knowledge of the applicable law; and (4) the resources counsel will commit to representing the class. FED. R. CIV. P. 23(g)(1)(C)(i).

The court may also consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class. FED. R. CIV. P. 23(g)(1)(C)(ii). The Advisory Committee has noted that "[n]o single factor should necessarily be determinative in a given case." FED. R. CIV. P. 23(g) advisory committee's note. Proposed Class Counsel meet these criteria. These firms did substantial work identifying, investigating, prosecuting, and settling Plaintiffs' and the Class Members' claims. Proposed Class Counsel have, as noted, substantial experience in employment class actions and the lawyers who worked on this matter are well-versed in wage and hour law and in class action law, and are well qualified to represent the interests of the Class. *See* above at page 21 n.8; Lesser Dec. ¶ 14, 15 & Exhibits 2, 3.

<u>CONCLUSION</u>

For all of the foregoing reasons, Plaintiffs ask the Court to (1) preliminarily approve the proposed settlement; (2) conditionally certify the Settlement Classes for settlement purposes; (3) approve the proposed notice forms and their dissemination; (4) appoint Class Counsel, Class Representatives and Claims Administrator; (5) set a date by which members of the Settlement Classes must submit comments on, objections to, claims for proceeds under, or requests to be excluded from, the proposed settlement; and (6) schedule a final settlement approval hearing.

Date:   August 13, 2014

s/ Seth R. Lesser

_____

Seth R. Lesser
Fran Rudich
Dudley Jordan
KLAFTER OLSEN & LESSER LLP
Two International Drive, Suite 350
Rye Brook, New York 10573
Telephone:   (914) 934-9200

Facsimile:      (914) 934-9220

Gregg I. Shavitz
Susan H. Stern
Paolo C. Meireles
SHAVITZ LAW GROUP, P.A.
1515 South Federal Highway, Suite 404
Boca Raton, Florida 33432
Telephone:    (561) 447-8888
Facsimile:     (561) 447-8831

*Attorneys for Plaintiffs*